IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY WILLIAMS, | : | CIVIL ACTION NO. **1:CV-07-637** |
| | : | |
| Plaintiff | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| LT. WICKISER, et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

Plaintiff, Larry Williams, formerly an inmate at the State Correctional Institution at Dallas ("SCI-Dallas") originally filed, *pro se*, the instant civil rights action pursuant to 42 U.S.C. § 1983, on April 4, 2007. (Doc. 1).[1] Plaintiff also filed a motion for leave to proceed *in forma pauperis*. (Doc. 2). Plaintiff indicated that he has exhausted his Administrative remedies at SCI-Dallas. (Doc. 1, p. 1). As exhibits to his original Complaint, Plaintiff attached copies of his Pennsylvania Department of Corrections ("PA-DOC") grievance regarding the failure of prison staff to evacuate him during a fire on April 9, 2006, the responses thereto, and appeals.[2]

_____

[1] Plaintiff is now incarcerated at SCI-Graterford. However, all of his claims asserted in this case arose while he was confined at SCI-Dallas.

[2] In his original Complaint, Plaintiff indicated that he fully exhausted the grievance procedure available at SCI-Dallas. (Doc. 1, p. 1, ¶ II.). Plaintiff stated that he filed a grievance, but to no avail (*Id.*, p. 2, ¶ IV. 3.) alleging that on April 9, 2006, he was in danger of a fire that occurred at the prison and that he was not evacuated. (Doc. 1, attached exhibits). We previously noted that Plaintiff did not appear to file a grievance regarding his other three (3) original claims, namely that Defendants issued a false misconduct against him to keep him in segregated housing, that prison staff were hindering his attempt to overturn his criminal conviction and get a new trial, and that Defendant Nightcap was illegally deducting money from his prison account. Thus, we noted that Plaintiff did not seem to have exhausted all of his

## II.  PLRA.

We preliminary screened Plaintiff's original § 1983 complaint pursuant to the PLRA.  The Prison Litigation Reform Act of 1995,[3] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[4] Specifically, § 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

We found  that the original Complaint was subject to dismissal as to three (3) of Plaintiff's four (4) claims, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim.  We issued a Report and Recommendation on April 13, 2007, in which we recommend that Plaintiff be directed

---

original claims.

We also noted  that of Plaintiff's four (4) stated original claims, only his referenced claim against Defendant Lightcap specified the personal involvement of a Defendant.  *Id.*  However, we noted that Defendants had the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

[3]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[4]The Plaintiff completed an application to proceed *in forma pauperis* and authorization to have funds deducted from his prison account.  The court then issued an administrative order directing the warden to commence the withdrawal of the full filing fee due the court from the Plaintiff's prison trust fund account.

to file an amended complaint with respect to only his denial of access to court claim, Claim #1. We recommended that Plaintiff's Claims #2, #3 and #4, noted above, be dismissed, and that the generic "all other SCI-Dallas and DOC entities" Defendants be dismissed. We also recommended that Plaintiff's request for specific amounts of monetary damages be stricken from his original Complaint. (Doc. 6).

Plaintiff filed Objections to our Report and Recommendation. (Doc. 9). On July 27, 2007, the District Court issued a Memorandum and Order and adopted our Report and Recommendation. The Court dismissed all of Plaintiff's claims except for his First Amendment denial of access to courts claim and allowed Plaintiff to file an amended complaint within twenty (20) days "setting forth with greater specificity his denial of access to courts claim." (Doc. 13, pp. 7-8). The Court also denied Plaintiff's April 17, 2007 Motion for Appointment of Counsel (Doc. 7) without prejudice to re-file such motion after the Court screens his amended complaint, if he filed one. (*Id*.).

On August 6, 2007, Plaintiff filed a Motion to Amend his Complaint and another Motion for Appointment of Counsel. (Docs. 15 and 14). We issued an Order on August 7, 2007, denying Plaintiff's second Motion for Counsel as premature since he did not yet file his amended complaint. We denied Plaintiff's Motion to file an amended complaint as moot since the District Court already allowed Plaintiff to file an amended pleading only with respect to his denial of access to courts claim. (Doc. 16). On August 20, 2007, Plaintiff filed his Amended Complaint. (Doc. 17). Plaintiff reasserts his denial of access to court claim, but contrary to the District Court's Order, he also raises several new claims against three new Defendants. We now screen Plaintiff's Amended Complaint

3

under the PLRA.

In an action brought pursuant to 42 U.S.C. § 1983, the Plaintiff must prove the following two essential elements in order to state a claim:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976);  *Drummer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993);  *Parratt, supra*.     It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

### III. Motion to Dismiss.

When evaluating a pleading for failure to state a claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988). A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976). A complaint filed by a *pro se* party should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (citation omitted).

### IV.  Discussion.

As stated, Plaintiff 's Amended Complaint does not conform to the District Court's directive that Plaintiff amend only his denial of access to courts claim. Rather, in his amended pleading, Plaintiff raises claims under the Eighth Amendment, both denial of proper medical care and cruel and unusual punishment, Fourteenth Amendment due process, Fourteenth Amendment equal protection, as well as a vague conspiracy claim and a retaliation claim against three new Defendants along with original Defendant Wickiser. The named four (4) Defendants in the Amended

Complaint are all new except for Defendant Wickiser.[5]

The Defendants are:  Lt. Wickiser, of the RHU at SCI-Dallas; Correction Officer ("CO") Bowens, of the RHU at SCI-Dallas; CO Vanfossle, of the RHU at SCI-Dallas; and Dr. Stanish, of the Medical Department at SCI-Dallas.  (Doc. 17, p. 2).  Defendants are all employees of the Pennsylvania Department of Corrections ("PA-DOC").[6]  Also, Plaintiff indicates that all other Defendants named in his original Complaint, except for Defendant Wickiser, are considered dismissed since he does not raise any new § 1983 claims against these other original Defendants. (*Id*.).  Plaintiff sues all Defendants in his amended pleading in both their individual and official capacities.  (*Id*.).

At the outset, since Plaintiff seeks both injunctive and monetary relief, he cannot sue the Defendants for monetary damages in their official capacities.  As stated, Plaintiff sues all of the individual Defendants in their official capacities and in their individual capacities.  (Doc. 17, p. 2). To the extent that Plaintiff is seeking monetary damages from Defendants in their official capacities, this request for relief should be dismissed.  (Doc. 17, p. 6).  Plaintiff cannot sue the state Defendants for monetary damages in their official capacities. (*Id*.).  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.).

Therefore, we recommend that, to the extent that Plaintiff sues Defendants for monetary damages in their official capacities (Doc. 17, pp. 2, 6), this request for relief be dismissed.

---

[5]We have changed the caption in this case to *Williams v. Wickiser* since all of the other original Defendants have been dismissed and Plaintiff makes no new claims against any of the other original Defendants except for Wickiser.

[6]Defendants are thus state actors for purposes of § 1983.

As mentioned, Plaintiff re-asserts a First Amendment denial of access to courts claim as directed by the District Court, and he also raises claims under the Eighth Amendment, both denial of proper medical care and cruel and unusual punishment, Fourteenth Amendment due process, Fourteenth Amendment equal protection, as well as a vague conspiracy claim and a First Amendment retaliation claim.

### 1. *Eighth Amendment Denial of Medical Care Claim against Defendant Dr. Stanish*

Plaintiff again states that a fire in the SCI-Dallas prison broke out on April 9, 2006, and smoke filled his cell. Plaintiff avers that unnamed CO's would not let Plaintiff out of his cell. Plaintiff told a CO that he had trouble breathing and needed to see a doctor. (Doc. 17, pp. 2-3). Plaintiff avers that approximately three (3) hours later, Defendant Dr. Stanish came to his cell to check on him. Plaintiff told Dr. Stanish he was having trouble breathing, but Dr. Stanish told Plaintiff he looked "okay" and refused to take him to medical for an exam. Plaintiff also states that Dr. Stanish failed to file a required report about the incident. (*Id.*, p. 3). Plaintiff states that he filed a grievance about this incident and it was denied at all levels. Plaintiff also states that he began writing a lawsuit, seemingly regarding the fire situation and the failure of Dr. Stanish to take him to medical for an exam. (*Id.*).

Plaintiff raises only an Eighth Amendment denial of medical care claim as against Dr. Stanish based on the doctor's failure to timely respond to Plaintiff's cell "more than ½ hour" and "secondly by not giving the Plaintiff an exam to check his claims and document them." (*Id.*, p. 4). We do not find Plaintiff has stated an Eighth Amendment claim against Dr. Stanish.

Plaintiff claims that Defendant Dr. Stanish violated the Eighth Amendment by being deliberately indifferent to his medical needs because he was late getting to Plaintiff's cell to check him out and because after he looked at Plaintiff regarding Plaintiff's complaint about trouble breathing from the smoke, he found that Plaintiff looked "okay" and did not follow up by taking Plaintiff for an exam at the medical department. Plaintiff does not state that Dr. Stanish was aware that he indeed had a serious medical condition and that the doctor failed to properly treat it. Plaintiff does not claim that he suffered any serious condition after being exposed to smoke from the prison fire, and he does not claim any permanent or lasting condition as a result of Dr. Stanish's delay in arriving at his cell. Further, Plaintiff does not claim that he suffered any detrimental medical condition as a result of the doctor's decision that he did not have to go to medical for an exam. In fact, Plaintiff only appears to dispute Dr. Stanish's medical decision that he did not need a full exam in medical after the doctor visually assessed him.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825 (1994) *citing Helling v. McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991); *Estelle v. Gamble*, 429 U.S. 97 (1976). An inadequate medical care claim, as we have here, requires allegations that the prison official acted with "deliberate indifference to serious medical needs" of the plaintiff, while a prisoner. *Estelle*, 429 U.S. at 104 (1976); *Unterberg v. Correctional Medical Systems, Inc.*, 799 F. Supp. 490, 494-95 (E.D. Pa. 1992). The official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

draw the inference." *Id*. "The question...is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Farmer*, 511 U.S. at 843.

In order to state a viable Eighth Amendment claim, a prisoner must demonstrate that the Defendant was deliberately indifferent to his medical needs and that those needs were serious. *Estelle*, 429 U.S. at 106.

In the case of *Monmouth County Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988), the Court addressed whether the Plaintiff's alleged injuries rose to the level of being sufficiently serious for the purpose of establishing an Eighth Amendment violation.

The *Monmouth County* case stated that:

> "A medical need is 'serious,' in satisfaction of the second prong of the *Estelle* test, if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize  the necessity for a doctor's attention." *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981); *accord Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977).  The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment.  For instance, *Estelle* makes clear that if 'unnecessary and wanton infliction of pain,' 429 U.S. at 103, 97 S.Ct. at 290, results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment. *See Id*, at 105, 97 S.Ct. at 291.  In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious. (*Citations omitted*)."

*Monmouth County,* 834 F.2d at 347(3d Cir. 1987).

We find that Plaintiff clearly has failed to  meet the first hurdle of *Estelle, i.e.,* Defendant  Dr. Stanish was not deliberately indifferent to his serious medical needs.  We do not find that Plaintiff

has sufficiently alleged that Defendant Stanish denied him medical care for a serious condition or that he suffered any lasting medical condition or pain from this Defendant's assessment that Plaintiff appeared to be alright and that he did not need to go to medical for an exam.  Thus, we do not find that Plaintiff states that Dr. Stanish denied him proper medical care for his apparent temporary breathing trouble after the smoke was in his cell.  Further, Plaintiff alleges that he sought medical care for his breathing trouble and that Dr. Stanish arrived to assess his condition, although Plaintiff claims that it was not timely.  Thus, Plaintiff does not claim a failure to respond to his request for medical attention.  Rather, Plaintiff claims that he was denied proper care by Defendant Stanish since the doctor did not take him to medical for an exam and only found that Plaintiff looked "okay."  Plaintiff does not claim any exacerbation of his breathing problem or any health problem as a result of Dr. Stanish's decision that he did not need further evaluation or treatment.  Thus, Plaintiff fails to state that Dr. Stanish deprived him of any required medical care for a serious medical condition.

In *Monmouth, supra,* 834, F. 2d at 347, the Court said that a medical need is serious if the delay or denial of health care results in "wanton infliction of pain, lifelong handicap or permanent loss."  Here, Plaintiff fails to sufficiently allege any physical suffering or emotional suffering that was caused as a result of the stated Defendant's failure to allow him to receive a follow up exam in medical.  In fact, Plaintiff does not even claim that he required any further medical attention after the smoke from his cell cleared.  Taking all of the allegations of Plaintiff as true, as we must at this juncture, Plaintiff has not stated a legally sufficient Eighth Amendment denial of medical care claim against Defendant Stanish.  In short, Plaintiff has not alleged that the stated Defendant was

deliberately indifferent to his serious medical needs. Thus, we shall recommend that Plaintiff's Eighth Amendment denial of medical care claim be dismissed with respect to Defendant Stanish. Since there are no further claims against Dr. Stanish, we recommend that this Defendant be dismissed entirely from this case.

### 2. Claims against Defendants Wickiser, Bowens and Vanfossle

As stated, Plaintiff avers that after the April 9, 2006 fire, he began to write "a lawsuit concerning the matter." (*Id*., p. 3, ¶ 14.). Plaintiff states, and his Ex. A to his Amended Complaint shows, that he sent his lawsuit and exhibits to the library for copies on August 18, 2006. (*Id*., p. 4, ¶ 15.).[7] Plaintiff avers that Defendant Wickiser confiscated "the facts to [Plaintiff's] lawsuit" and Defendant said "they needed it for evidence."

Plaintiff also alleges that CO Bowens and CO Vanfossle began holding his incoming mail and refused to send out his grievance, his personal mail and legal mail. (*Id*., ¶'s 16.-18). Plaintiff then wrote an Inmate Request Slip to Defendant Wickiser dated June 17, 2004, and told him that the two stated CO's refused to send out his mail and that he was getting his mail 2 to 3 weeks later than it was postmarked. (*Id*., ¶ 19. and Ex. B). Plaintiff avers that "on June 17, 2004," he received a Notice of an Order from the Court, which according Plaintiff's Ex. C was dated September 13, 2006, stating that his federal habeas petition was denied since it was time barred. (*Id*., ¶ 21. and

---

[7]We can consider Plaintiff's Exhibits (Exs. A-C) attached to his amended pleading (Doc. 17) since he has referenced them in his Amended Complaint and his Constitutional claims are based on them. *See Pension Benefit Guar. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Ex. C).[8]

Plaintiff states that his habeas case would not have been dismissed as time barred "if the officers in question would not have held me in the hole [RHU] for five years restricting my law library access and refusing to send out my legal mail." (*Id.*, ¶ 22). Plaintiff concludes that he believes "all actions of the Defendants stemmed form his initial grievance of the [April 9, 2006] fire situation and the threat of his possible civil actions." (*Id.*, ¶ 23.).

Plaintiff raises several claims against Defendants Wickiser, Bowens and Vanfossle, namely claims for violations of First Amendment right of access to courts, Fourteenth Amendment due process, Fourteenth Amendment equal protection, Eighth Amendment deliberate abuse and harassment, jeopardizing his immediate and future health and safety, Eighth Amendment cruel and unusual punishment, First Amendment retaliation, and a conspiracy claim. We find no viable constitutional claim stated against Defendants Wickiser, Bowens and Vanfossle.

A. *First Amendment Retaliation Claim*

In *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001), the Court stated that "a prisoner litigating a retaliation claim must show that he suffered some 'adverse action' at the hands of the prison officials." To establish a retaliation claim, the Plaintiff must also show that there exists a causal nexus between the Plaintiff's constitutionally protected conduct and the adverse action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). We find that this nexus does not exist with respect to any of the named Defendants. Thus, as discussed below, we shall recommend that

---

[8]Plaintiff's claim against Defendant Wickiser that this Defendant confiscated the facts of his lawsuit and his claims against Defendants Bowens and Vanfossle that they refused to send out his mail and delayed giving him his mail occurred over two years apart.

Plaintiff's First Amendment retaliation claim be dismissed.

As stated, Plaintiff states that he believes "all actions of the Defendants stemmed from his initial grievance of the [April 9, 2006] fire situation and the threat of his possible civil actions." (*Id.*, ¶ 23.). Plaintiff states that if he was not held "in the hole for five years," he would have had access to the law library and his habeas petition would not have been dismissed as time barred. Clearly, Plaintiff's initial placement in the hole five years ago could not have been as retaliation for his initial grievance regarding the April 9, 2006 fire situation and subsequent threat of his possible civil actions since he was already held in the hole long before the fire incident occurred. Secondly, Plaintiff's grievance about the April 9, 2006 fire incident and threat of lawsuits certainly could not have been the motive behind the alleged conduct of CO Bowens and CO Vanfossle of refusing to send out his mail and grievance, and of holding his incoming mail for two or three weeks, since this conduct occurred in June 2004, according to Plaintiff's own evidence, *i.e.* his Ex. B (Doc. 17), June 17, 2004 Inmate Request slip to Defendant Wickiser complaining about CO's Bowens and Vanfossle. Thus, the alleged failure by Defendants Bowens and Vanfossle to send out Plaintiff's mail and the alleged withholding of his mail, which arose in June 2004, could not possibly have been done as retaliation for Plaintiff's grievance about the April 9, 2006 fire situation.

Moreover, as discussed above, the alleged conduct of Dr. Stanish was simultaneous with the fire incident and therefore, this conduct clearly could not have been done as retaliation for Plaintiff's later grievance about the fire situation.

Thus, we shall recommend that Plaintiff's First Amendment retaliation claim be dismissed as against all Defendants.

B. *Conspiracy Claim*

Plaintiff avers that Defendants Wickiser, Bowens and Vanfossle "all conspired to harass, abuse and threaten the Plaintiff when they denied him due process and access to the courts by not sending out his mail and halting his incoming mail." (Doc. 17, p. 5, ¶ 2.). Plaintiff did not even allege that Defendant Wickiser was personally involved with his claim that CO's Bowens and Vanfossle were holding his mail and refused to send out his mail. (*Id*., p. 4). In his request for relief, Plaintiff states that Defendants conspired to abuse and harass him by not sending out his mail. (*Id*., p. 6, ¶ 1. C.). Plaintiff's claims do not amount to a conspiracy claim that the three stated Defendants were somehow acting pursuant to an agreement to harass, abuse and threaten him by denying him access to the courts by not sending out his mail and halting his incoming mail.[9] Plaintiff fails to state a conspiracy claim against Defendants.

The Third Circuit in *Jones v. Maher*, Appeal No. 04-3993 (3d Cir. 2005), slip op. p. 5, stated that broad and conclusory allegations in a conspiracy claim are insufficient to state a viable claim. (Citation omitted). Also, the United States District Court for the Middle District of Pennsylvania, in *Flanagan v. Shively*, 783 F. Supp. 922, 928-29 (M.D. Pa. 1992), *aff'd*. 980 F. 2d 722 (3d Cir. 1992), *cert. denied* 510 U.S. 829 (1993), stated as follows:

Bare conclusory allegations of "conspiracy" or "concerted action"

---

[9]We note that Plaintiff's filings in the present case certainly belie his claim that Defendants have conspired to deny him access to the courts and to hold his mail, both outgoing and incoming.

14

will not suffice to allege a conspiracy.  The plaintiff must expressly
allege an agreement or make averments of communication,
consultation, cooperation, or command from which such an
agreement can be inferred.  In *Waller v. Butkovich,* 584 F.Supp. 909,
931 (D.C.N.C. 1984), the district court outlined the pleading
requirements in a conspiracy action.

> In most cases, a bare conclusory allegation of 'conspiracy'
> or 'concerted action' will not suffice.  The plaintiffs must
> expressly allege an agreement or make averments of
> 'communication, consultation, cooperation, or command'
> from which such an agreement can be inferred . . .
> (Citation omitted.) . . .  Allegations that the defendants'
> actions combined to injure the plaintiffs are not a
> sufficient basis from which to imply a conspiracy . . .
> (Citation omitted.)
> Additionally, the plaintiffs must make 'specific factual
> allegations connecting the defendant to the injury' . . .
> (Citations omitted.) . . .

The Plaintiff fails to state a conspiracy claim against Defendants Wickiser, Bowens and

Vanfossle, in that he does not allege an agreement between any specific Defendants to deliberately

deny him access to the courts and to hold his mail.  As stated, in June 2004, Plaintiff complained

to Defendant Wickiser about this alleged conduct of CO's Bowens and Vanfossle.   However,

Defendant Wickiser was not alleged to be involved with it.  We find that Plaintiff's bare conclusory

allegations of conspiracy against Defendants Wickiser, Bowens and Vanfossle are inadequate, as

a matter of law, to allege a conspiracy claim, and shall recommend that his claim be dismissed.  *See*

*Flanagan, supra.*

C. *Fourteenth Amendment Due Process Claim*

Plaintiff avers that "all Defendants (sic) actions was (sic) a violation of Plaintiffs (sic)

Constitutional right under the fourth (sic) [,] Eighth and fourteenth (sic) Amendment, Due Process

Clause." (Id., p. 5, ¶ 3.).[10]  Plaintiff seems to claim that his placement in the "hole," *i.e.* RHU, for five years somehow violated his Fourteenth Amendment due process rights.  Plaintiff does not elaborate on this claim or specifically state any personal involvement of any Defendant with respect to this due process claim.   For that reason alone, since Plaintiff has been advised of the requirements of a § 1983 action in this Court's prior Report and Recommendation and July 2007 Memorandum, Plaintiff's Fourteenth Amendment due process claim should be dismissed.  Plaintiff has already been given one chance to amend his pleading to conform with the requirements of Rule 8 and § 1983.  (Doc. 13).  He has clearly failed to do so with respect to his Fourteenth Amendment due process claim.    Further, Plaintiff already attempted to raise a Fourteenth Amendment due process claim in his original Complaint, and this claim was dismissed by the District Court. (Doc. 13, pp. 2, 7 and Doc. 6, pp. 9-10).  The District Court did not allow Plaintiff to amend his due process claim; it only allowed him to amend his First Amendment denial of access to courts claim.

Moreover, Plaintiff again has not implicated a liberty interest with respect to his due process claim that he was wrongfully kept in "the hole for five years," *i.e.* the segregated housing unit at SCI-Dallas, and with respect to his claim that his law library access was restricted as a result.  Plaintiff, as stated, is no longer confined at SCI-Dallas.  Plaintiff also seems to again aver, without any details, that Defendants' conduct caused him to be kept in the segregated housing unit.  Plaintiff again seems to claim that the procedural safeguards of *Wolff v. McDonnell,* 418 U.S. 539 (1974), were

---

[10]Page 5 of Plaintiff's Amended Complaint erroneously contains two separate ¶ 3.'s.,Doc. 17.

not followed in his case.[11]  Plaintiff seems to claim that the segregated housing unit restrictions imposed on him, such as restricted access to the law library (Doc. 17, p. 4, ¶ 22.), constituted an atypical and significant hardship, and implicated his due process rights.

In *Griffin v. Vaughn*, 112 F.3d 703  (3d Cir. 1997), the Court found that confinement of a prisoner in restrictive housing for fifteen (15) months did not implicate a constitutionally protected liberty interest.   *See also Thomas v. Rosemeyer*, 199 Fed. Appx. 195 (3d Cir. 2006) (270 days in restrictive housing unit not atypical or significant hardship).

Further, the Court in *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997), stated:

> Applying the precepts of *Sandin* to the circumstances before us, we conclude that the conditions experienced by Griffin in administrative custody did not impose on him "atypical and significant hardship," that he was thus deprived of no state created liberty interest, and that he failure to give him a hearing prior to his transfer to administrative custody was not a violation of the procedural due process guaranteed by the United States Constitution.

The *Griffin* Court concluded that, considering the reasons to transfer inmates from general population to administrative custody, such as inmates deemed to be security risks, stays in administrative custody for many months (*i.e.* as long as 15 months) are not uncommon.  *Id.* at p. 708.  Thus, the *Griffin* Court held that the inmate Griffin's transfer to and confinement in administrative custody "did not deprive him of a liberty interest, and that he was not entitled to procedural due process protection."  *Id.*  The Third Circuit in *Fraise v. Terhune*, 283 F.3d 506 (3d Cir. 2002), also found that the New Jersey DOC did not violate the inmates' due process rights by

---

[11]As stated above, Plaintiff raised similar claims in his original Complaint, and they were dismissed by the District Court. (Doc. 1, p. 2 and Doc. 13, p. 6).

not giving them notice prior to their placement in a restricted custody program, the STGMU, since the inmates were not deprived of a protected liberty interest. *Id*. at 522-523. Further, this Court has repeatedly held that the placement of Pennsylvania inmates into the Pennsylvania DOC's Special Management Unit ("SMU") program does not implicate their liberty interests. *See Meekins, supra*.[12] *See Keys v. PA DOC*, Civil No. 07-0338, M.D. Pa. Pursuant to *Fraise*, the Court should generally not interfere with matters of prison administration such as which inmate should or should not be in the segregated housing unit.

Based again on *Sandin* and *Griffin*, the Plaintiff's Amended Complaint, like his original Complaint, fails to state a due process claim, since we find that the segregated housing unit restrictions did not impose atypical and significant hardship on the Plaintiff in relation to the ordinary incidents of prison life. Thus, we shall once again recommend that Plaintiff's due process claim be dismissed as against all Defendants.

### D. Fourteenth Amendment Equal Protection Claim

Plaintiff simply alleges that "all Defendants(sic) actions was a violation of Plaintiffs (sic) Constitutional right under the fourteenth Amendment Equal Protection Clause." (Doc. 17, p. 5, ¶ 4.). Plaintiff summarily alleges on page 5 of his Amended Complaint, Doc. 17, that his equal

---

[12]This Court has consistently found no liberty interest with respect to claims that due process rights have been violated by not giving an inmate a hearing prior to his placement in a SMU program. *See Spencer v. Kelchner,* 2007 WL 88084 (M.D.Pa. Jan. 9, 2007)(Kosik, J.); *Francis v. Dodrill,* 2005 WL 2216582 (M.D.Pa., Sept. 12, 2005); *Stotts v. Dodrill,* Civil No. 04-0043 (M.D.Pa., Feb. 7, 2005). In these cases, this Court has found that an inmate's placement in the SMU does not implicate his liberty interests. This Court also found that the inmates' due process rights were not implicated by their confinement in the SMU, since it did not constitute an atypical and significant hardship.

protection rights were violated by Defendants.   Plaintiff does not specify his allegations that Defendants violated the Equal Protection Clause again, in violation of Rule 8 and in violation of the requirements of § 1983, of which Plaintiff has been previously advised by this Court.  In any event, Plaintiff does not claim that Defendants treated him differently than other similarly situated inmates based on his race, gender, or nationality.

Plaintiff seems to assert, in a conclusory manner, that his right to equal protection was violated by all Defendants since Defendants Bowens and Vanfossle would not send out his mail and halted his incoming mail.  Specifically, Plaintiff does not claim that he was  being treated differently than other similarly situated inmates.    Nor does Plaintiff aver that Defendants treated him differently than similarly situated inmates based on his race, gender, or nationality.

We find that the Plaintiff's Equal Protection claim against Defendants should not proceed because the Plaintiff has not alleged that Defendants purposely discriminated against him on the basis of his race, gender, or nationality.  Plaintiff does not claim that Defendants were motivated by a discriminatory intent with respect to Plaintiff's allegations.  In fact, Plaintiff does not allege that his mail was not sent out and that his incoming mail was halted because of his race or nationality. Rather, he states that this conduct with respect to his mail, which occurred in June 2004, was done in retaliation for his grievance about the April 9, 2006 fire situation and his threat of possible civil actions.  (Doc. 17, p. 4, ¶ 23.). Plaintiff states that his federal habeas case would not have been denied as time barred if he was not placed in the segregated housing for five years.  (*Id.*, ¶ 22.). Such claims do not allege any form of racial discrimination by Defendants.  Plaintiff fails to claim a discriminatory motive for Defendants' alleged conduct.  Additionally, we  find that Plaintiff has

not properly stated that he and other inmates were similarly situated for purposes of an equal protection claim.

In the case of *Jefferson v. Wolfe*, 2006 WL 1947721, * 15 (W.D. Pa.), the Court stated:

> "as a threshold matter, in order to establish an equal protection violation, the plaintiff must ' . . . demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class.'" *(Citing Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996).

The elements of an Equal Protection claim require Plaintiff to state Defendants intended to discriminate against him, and later to prove this by either direct or circumstantial evidence. *See Pa. v. Flaherty*, 983 F. 2d 1267 (3d Cir. 1993) (Intent is a *prima facie* element of a § 1983 equal protection claim of discrimination) (citing *Washington v. Davis*, 426 U.S. 229 (1976). *See also Williams v. Pa. State Police*, 108 F. Supp. 2d 460, 471 (E.D. Pa. 2000) ("to prevail on a  § 1983 claim, a plaintiff must prove that the Defendant intended to discriminate") (citation omitted).

The Equal Protection Clause does not require that all persons be treated alike, but instead, a plaintiff must show that the differential treatment to those similarly situated was unreasonable, or involved a fundamental interest or individual discrimination. *Tigner v. Texas*, 310 U.S. 141, 147 (1940); *Price v. Cohen*, 715 F.2d 87, 91 (3d Cir. 1983), *cert. denied*, 465 U.S. 1032 (1984).  It is well-settled that a litigant, in order to establish a viable equal protection claim, must show an intentional or purposeful discrimination.  *Snowden v.  Hughes*, 321 U.S. 1, 8 (1944); *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-14 (11th Cir. 1987), *cert. denied* 485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race,

religion, gender, alienage or national origin, (2) the violation of fundamental rights, and (3)

classifications based on social or economic factors.   *See, e.g., Britton v. City of Erie*, 933 F. Supp.

1261, 1266 (W.D. Pa. 1995), *aff'd*, 100 F.3d 946 (3d Cir. 1996); *Adams v. McAllister*, 798 F. Supp.

242, 245 (M.D. Pa.), *aff'd*. 972 F.2d 1330 (3d Cir. 1992).

As the Court in *Barnes Foundation v. Township of Lower Merion*, 942 F.Supp. 970, 983 (E.D.

Pa. 1997), stated:

> The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection Clause announces the "fundamental principle" that "the State must govern impartially," *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587 (1979), and "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

As the *Wilkins* Court stated:

> A litigant seeking to establish a viable equal protection claim must show an intentional or purposeful discrimination. *Wilson v. Schillinger,* 761 F.2d 921, 929 (3d Cir.1985), *cert. denied,*475 U.S. 1096, 106 S.Ct. 1494, 89 L.Ed.2d 895 (1986). However, the Equal Protection Clause "does not deny to States the power to treat different classes of persons in different ways." *Reed v. Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). The Court of Appeals for the Third Circuit has observed that d that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike." ' *Artway v. Attorney Gen.*, 81 F.3d 1235, 1267 (3d Cir.1996) (quoting *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)); *see also Kuhar v. Greensburg-Salem Sch. Dist.*, 616 F.2d 676, 677 n. 1 (3d Cir.1980) ("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").

> Based upon the undisputed facts, it cannot be concluded that the Defendants engaged in intentional or purposeful discrimination or that they treated Wilkins differently from similarly situated individuals on the basis

of his race (Wilkins is Black) or some other impermissible reason. There are simply
no factual averments which could support a claim that the Defendants engaged
in actions which intentionally discriminated against the prisoner.

2006 WL 860140, * 11.

Plaintiff has not alleged facts from which it can be concluded that any of Defendants

engaged in intentional or purposeful discrimination, or that he was treated differently by

Defendants than similarly situated persons on the basis of his race, nationality or gender.  In short,

Plaintiff fails to allege discrimination with respect to his alleged treatment he received from

Defendants. There is not a cognizable equal protection claim stated.

Therefore, we shall recommend that Plaintiff's equal protection claim against all Defendants

be dismissed.

> E.  Eighth Amendment Claims against Defendants Wickiser, Bowens and Vanfossle

Plaintiff avers:

> that defendants Wickiser, Bowens and Vanfossle were all deliberate (sic)
> indifferent when they knew of or enforced deliberate abuse and
> harassment on plaintiff, therefore jeopardizing his immediate
> and/or future health and safety which was and is a violation of his
> constitutional right under the Eighth Amendment.

(Doc. 17, p. 5, ¶ 3. (First ¶ 3.)).

Plaintiff also avers that Defendants' actions violated his rights under the Eighth Amendment

Cruel and Unusual Punishment Clause.  (Id., ¶ 5.).  We find no Eighth Amendment claims against

the stated three Defendants.

Plaintiff's general claim that Defendants Wickiser, Bowens and Vanfossle deliberately

abused, harassed and threatened him, and jeopardized his health and safety (both immediate and

22

future) does not state an Eighth Amendment claim.  Plaintiff does not claim that he was physically abused or injured by any Defendant.[13]  Plaintiff states no viable claim of physical injury as a result of any conduct alleged to have been taken by Defendants in this case.

While "[t]he Constitution 'does not mandate comfortable prisons,' ... neither does it permit inhumane ones...." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970  (1994)(quoting *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, (1981)). "[I]t is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.' " *Farmer,* 511 U.S. at 832, 114 S.Ct. 1970 (quoting *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475 (1993)). Under *Farmer*, conditions of confinement will violate the Eighth Amendment if the following two-prong test is met: (1) the deprivation is sufficiently serious; and (2) deliberate indifference by the prison official Defendants.  *Id*. at 834. Stated simply, an Eighth Amendment violation exists when the prisoner is denied "the minimal civilized measure of life's necessities" and the prison official acted with recklessness.  *Farmer,* 511 U.S. at 834-35 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392); *Wilson v. Seiter,* 501 U.S. 294,

---

[13]The law is clear that an inmate cannot recover for emotional injury if no physical harm is stated.  Plaintiff only alleges that the harassment and abuse by Defendants jeopardized his immediate and future health and safety, *i.e.* mental injury.  In this case, Plaintiff does not make any claim of physical harm and thus his allegations are clearly insufficient to amount to the requisite harm necessary to seek damages for mental injury.  Money damages for his emotional distress are precluded since he has not alleged physical injury.  *See* 42 U.S.C. § 1997e(e).  The law is clear that an inmate may not file a federal civil rights action based on a claim of mental or emotional injury seeking compensatory damages without any prior showing of physical injury. Here, the Plaintiff fails to claim physical injury as a result of Defendants' alleged harassment and threats.  Thus, a claim for money damages for mental anguish is precluded.  *Allah v. Al-Hafeez,* 226 F.3d 247, 250-251(3d Cir. 2000).  Thus, to the extent that Plaintiff makes a  claim for damages for emotional and mental harm it should be dismissed from his Amended Complaint.

303, 111 S.Ct. 2321 (1991). In order to find an Eighth Amendment violation regarding conditions of confinement, the evidence must show that the prison official was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.  Plaintiff makes no such claim as to Defendants Wickiser, Bowens and Vanfossle.

As stated, Plaintiff alleges that the stated three Defendants violated the Eighth Amendment with respect to their alleged abuse and harassment of him which he claims jeopardized his health and safety. (Doc. 17, p. 5, ¶ 3.).  Based on the alleged conduct by Defendants, we find that no inference could be drawn by Defendants that a substantial risk of serious harm existed to Plaintiff. Further, no requisite inhumane conditions are alleged.  At most, Plaintiff claims that the harassment somehow jeopardized his health and safety, but he does not say he suffered any physical harm or mental condition.   Thus, we shall recommend that Plaintiff's Eighth Amendment deliberate indifference claim and conditions of confinement claim against Defendants Wickiser, Bowens and Vanfossle be dismissed.

Plaintiff also alleges that Defendants' abuse and harassment of him violated the Eighth Amendment proscription against cruel and unusual punishment.  (Doc. 17, p. 5).  As the Court stated in *Wright v. O'Hara*, 2004 WL 1793018 (E.D. Pa.) * 7, "[w]here Plaintiff has not been physically assaulted, Defendant's words and gestures alone are not of constitutional merit." (Citation omitted).  The *Wright* Court also stated:

> "Mean harassment . . .  is insufficient to state a constitutional deprivation." *Murray v. Woodburn*, 809 F.Supp. 383, 384 (E.D. Pa. 1993).  Verbal abuse or threats alone do not state a constitutional claim. *See Maclean v. Secor*,

> 876 F.Supp. 695, 698 (E.D. Pa. 1995). "This is so because
> '[n]ot every unpleasant experience a prisoner might endure
> while incarcerated constitutes cruel and unusual
> punishment. *Ramos v. Vaughn*, No. 94-2596, 1995 U.S.
> Dist. LEXIS 2164 at *12 (E.D.Pa. June 27, 1995), *quoting*
> *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

*Id.* * 6.

In the *Wright* case, Plaintiff alleged that the CO verbally threatened and harassed him and lunged towards him with a fist, without any physical contact. The *Wright* Court concluded that this conduct, "while inappropriate, does not give rise to an Eighth Amendment violation as it is not 'sufficiently serious'." *Id.* *7 (citation omitted). Similarly, our Plaintiff alleges verbal harassment and abuse, without physical contact. If true, this conduct would certainly be inappropriate, but it does not state an Eighth Amendment claim.

Thus, Plaintiff has not raised a constitutional violation with respect to the alleged harassment and abuse by Defendants. Therefore, we do not find that any Eighth Amendment claim has been asserted with respect to Defendants' alleged verbal and harassing conduct towards Plaintiff.

### F.  First Amendment Denial of Access to Court Claim

As stated, Plaintiff was only permitted leave by the District Court to amend his denial of access to court claim.

Plaintiff states that he sent a lawsuit and evidence to the prison library for copies, and his Ex. A shows that this occurred on August 18, 2006. Plaintiff avers that Defendant Wickiser confiscated "the facts of my  lawsuit" and told Plaintiff "they needed it for evidence." (Doc. 17, p. 4, ¶'s 15.-16. and Ex. A). Plaintiff clearly knows the facts of his present lawsuit, as evidenced by his pleadings. (Docs. 1 and 17). Plaintiff also states that Defendants Bowens and Vanfossle were holding his

incoming mail and refused to send out his grievance and mail, both legal and personal mail.  (*Id.*, ¶ 18.).  Plaintiff states that he then submitted an Inmate Request Slip to Defendant Wickiser about Defendants Bowens' and Vanfossle's conduct of holding his incoming mail and refusing  to send out his grievance and mail.  However, Plaintiff's claim against Defendants Bowens and Vanfossle, and his Request Slip to Defendant Wickiser regarding the holding of his mail, according to Plaintiff's own Exhibit B, occurred in June 2004, almost three years before Plaintiff filed the instant case in April 2007.  This conduct was also more than two years after Plaintiff alleges Defendant Wickiser confiscated the facts for his lawsuit.  Plaintiff also states that on June 17, 2004, he received a Notice from  the Court that his federal habeas case was denied due to being time barred.  Plaintiff refers to his Ex. C (Doc. 17), which is a Notice of Order from the Third Circuit dated September 13, 2006.  Plaintiff did not attach a copy of the Third Circuit's Order to his Amended Complaint.  Plaintiff avers that his federal habeas case would not have been dismissed as time barred if Defendants did not hold him "in the hole for five years restricting my law library access and refusing to send out my outgoing mail." (*Id.*, p. 4, ¶ 22.).[14]  As stated above, Plaintiff's claims that Defendants Bowens and Vanfossle refused to send out his mail and held up delivering his incoming mail dated back to June 17, 2004.  (Doc. 17, Ex. B).[15]

---

[14]As we stated in our April 2007 Report and Recommendation, Plaintiff had  no Constitutional right to a particular custody status, *i.e.* general population as opposed to segregated housing custody. *See Wilson v. Horn*, 971 F.Supp. 943 (E.D. Pa. 1997). Also, as discussed above and in our April 2007 Report and Recommendation, Plaintiff did not implicate any due process violation with respect to his placement "in the hole."

[15]There is a two-year SOL with respect to § 1983 claims.   As this Court stated in the case of *Martin v. Red Lion Police Dept.*, Civil No. 00-1622, M.D. Pa. (October 26, 2004, Memorandum), pp. 5-6:

The District Court has allowed Plaintiff to file an amended complaint only with respect to his First Amendment denial of access to court claim. (Doc. 13, pp. 5, 7 and 8). As discussed, Plaintiff failed to abide by the Court's July 2007 Order (Doc. 13), and filed an Amended Complaint raising a myriad of new claims along with his First Amendment denial of access to court claim. Since the Court has already found that Plaintiff's placement into the segregated housing at SCI-Dallas did not violate his Fourteenth Amendment due process rights and that Plaintiff did not have a protected liberty interest in being held in segregated housing, we find that Plaintiff cannot now claim that the restriction on his use of the prison law library for five years while he was in segregated housing can form the basis of his amended First Amendment denial of access to court claim. In fact, as discussed, Plaintiff does not state the specific involvement of any of the four Defendants named in his Amended Complaint with respect to his placement "in the hole for five years." Further, Plaintiff fails to state why he could not have timely filed his federal habeas petition during the entire five years he was placed in segregated housing.

---

The statute of limitations for an action under 42 U.S.C. § 1983, is governed by the corresponding local statute of limitations for tort actions seeking recovery for personal injuries. Wilson v. Garcia, 471 U.S. 261, 276 (1985); Reitz v. County of Bucks, 125 F.3d 139, 143 (3d Cir. 1997). Pennsylvania has a two-year statute of limitations for personal injury actions, including the tort claim of battery. 42 Pa. C.S.A. § 5524. Therefore, a two-year statute of limitations applies to § 1983 claims in Pennsylvania.

However, the SOL is an affirmative defense that Defendants must raise.

27

Additionally, Plaintiff does not state that Defendant Wickiser was involved with the refusal to send out his legal mail.  He only states that Defendant Wickiser did not respond to his Inmate Request Slip of June 17, 2004, in which he complained that Defendants Bowens and Vanfossle were holding his incoming mail and refused to send out his mail. (Doc. 17, p. 4).  Plaintiff does not specify how Defendant Wickiser, or Defendants Bowens and Vanfossle,  were  personally involved in his placement in segregated housing for five years and in his restricted access to the law library while he was confined there.   Plaintiff attributes this placement into the segregated housing as the real cause for his federal habeas case to be denied as untimely. (*Id.*, ¶ 22.).  Further, Plaintiff does not even implicate Defendant Wickiser with the dismissal of his habeas case, which he states occurred in June 2004[16], presumably by the District Court in 2004 and dismissal of his appeal by the Third Circuit in September 2006.  Plaintiff avers that Defendant Wickiser confiscated the facts to his lawsuit in August 2006, which is well after Plaintiff states his federal habeas case was dismissed, *i.e.* June 2004.   Thus, Plaintiff alleges no actual injury with respect to Defendant Wickiser's confiscation of his facts in August 2006, especially since the lawsuit Plaintiff seems to have been preparing in August 2006 was his present case which he filed in April 2007 and which involved the prison fire of April 2006.  Since Plaintiff's allegations against Defendant Wickiser occurred after his federal case was dismissed and since Plaintiff  was able to file the present case about the fire incident after he alleges Wickiser confiscated his facts, he does not state any actual

---

[16]As stated, Plaintiff avers that Defendant Wickiser confiscated the facts to his lawsuit, and his Exhibit A shows that this allegedly occurred on August 18, 2006. (Doc. 17, p. 4).

injury regarding his First Amendment denial of access to court claim as against Wickiser.[17]  Thus, the First Amendment denial of access to court claim against Defendant Wickiser should be dismissed.

Moreover, since Plaintiff has not stated how Defendants Bowens and Vanfossle were personally involved in the decision to place him in the segregated housing for five years and to restrict his access to the law library while he was confined there, which Plaintiff states was the cause of the dismissal of his federal habeas case, Plaintiff's First Amendment denial of access to court claim against these two Defendants should also be dismissed.

Plaintiff is construed as claiming that the conduct of Defendants in placing him in the segregated housing for five years, which caused him to have restricted access to the law library, and in refusing to send out his mail in 2004 caused him to be unable to timely file his habeas petition. Plaintiff alleges  an actual injury since he claims that his federal habeas petition was denied as time barred.  However, Plaintiff again fails to allege the specific conduct by any named Defendant as to how they were personally involved in placing him in the segregated housing unit for five years and as to how they restricted his access to the law library during that five-year period.

Again, Plaintiff fails to specifically state how he missed a court filing date with respect to his habeas case which was caused directly by conduct of a named Defendant.  Plaintiff does not specifically state that Defendants Wickiser, Bowens and Vanfossle were personally involved in the decision to place him in segregated housing for five years and that they then were personally

---

[17]In his original Complaint, Plaintiff alleged that in regards to a fire at the prison on April 9, 2006, his life was in danger, and that the prison staff would not let him out of his cell and repeatedly denied that he was in danger.  (Doc. 1, p. 2, ¶ IV. 3.).

involved in restricting his access to the law library while he was there. Plaintiff only states that Defendants Bowens and Vanfossle refused to send out his legal mail in June 2004, and that this somehow caused his habeas case to be denied as time barred. He does not allege that these two Defendants refused to send out his habeas petition or that he timely prepared his habeas petition for filing within in the AEDPA one- year SOL, and that these Defendants refused to mail it out.

Plaintiff has not stated any personal involvement of Defendants with respect to his allegation that he was held "in the hole for five years restricting my law library access." Plaintiff states that this was the reason why he could not timely file his habeas petition. Plaintiff does not claim that the conduct of any named Defendant denied him of his right to access to the court since he does not state how any Defendant was involved in the decision to place him "in the hole for five years." (*Id.*, p. 4). Plaintiff again failed to specify his First Amendment denial of access to court claim after he was granted leave by the District Court to do so.

It is well established that prisoners have a constitutional due process right of access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). However, in order to prevail on such a claim, it is necessary to allege an actual injury -- an instance in which the Plaintiff was actually denied access to the courts. *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2163 (1996); *Peterkin v. Jeffes*, 855 F.2d 1021, 1041 (3d Cir. 1988), *citing Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir. 1982); *Kershner v. Mazurkiewicz*, 670 F.2d 440, 444 (3d Cir. 1982). Plaintiff has again not properly stated such a claim nor has he alleged any personal involvement by any named Defendant regarding this claim which he attributes to his placement "in the hole for five years." Plaintiff does not allege how any Defendant was involved in his placement "in the hole for five years " and thus, he does not state

any actual injury or adverse action with respect to his First Amendment access to courts claim against Defendants.  We will not recommend that Plaintiff be again permitted to amend his denial of access to court claim since he has already been given the opportunity to do so.

Therefore, we find that Plaintiff has failed to state a viable § 1983 claim with respect to any Defendant in his Amended Complaint.  We will recommend that Plaintiff's Amended Complaint be dismissed as to all four Defendants.

**V.  Recommendation.**

Based on the foregoing, we respectfully recommend that Plaintiff's Amended Complaint **(Doc. 17)** be dismissed in its entirety as to all four Defendants since Plaintiff has failed to state any Constitutional claim against them.[18]

s/ **Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: September 4, 2007**

---

[18]As relief in his Amended Complaint, Plaintiff again requests appointment of counsel. (Doc. 17, p. 6, ¶ 2. C.).  The District Court denied Plaintiff's prior Motion for Counsel without prejudice to re-file a request after his amended pleading was screened.  (Doc. 13, p. 7).  We recommend that Plaintiff's renewed request for counsel be dismissed as moot, since, upon screening, we do not find that Plaintiff has stated a single Constitutional claim against any Defendant in his Amended Complaint.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY WILLIAMS, | : | CIVIL ACTION NO. **1:CV-07-637** |
| | : | |
| Plaintiff | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JAMES LIGHTCAP, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **September 4, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                         **s/ Thomas M. Blewitt**
_____                                      
                                         **THOMAS M. BLEWITT**
                                         **United States Magistrate Judge**


**Dated: September 4, 2007**